## WARREN v. RAYBURN.

Court of Appeals of Kentucky.

April 30, 1954.

Bullitt, Dawson & Tarrant, Thomas S. Dawson, Louisville, for appellant.

J. J. Leary, Frankfort, Robt. M. Spragens, Lebanon, for appellee.

CULLEN, Commissioner.

At the November 1953 election, Willie Warren, Republican, and Paul Rayburn, Democrat, were candidates for the office of sheriff of Green County. The canvass of the votes cast in person at the precinct polling places showed that Warren had received 2,386 votes and Rayburn had received 2,414. However, when the absentee ballots were counted, it was found that Warren had received 181 of the absentee votes, while Rayburn had received only 16. This made Warren the winner by 137 votes.

Rayburn contested the election, attacking particularly the absentee ballots. The court found that all of the absentee ballots were illegal and void, and thereupon entered judgment declaring Rayburn to have been elected. Warren appeals.

The Honorable W. H. Spragens, Judge of the Green Circuit Court, filed a memorandum opinion, which we quote:

"The record in this case fails to disclose the practice of actual fraud, such as tampering with the ballots or bribery, on the part of those in charge of the absentee balloting and if it was incumbent upon the contestant to establish actual fraud the petition would have to be dismissed. The question of whether the record makes out a case of constructive or presumptive fraud is more difficult since some of the earmarks of constructive fraud are disclosed. It is apparent that the County Court Clerk, entrusted with the practically exclusive conduct of absentee balloting, was vitally interested in the result of the absentee voting since he was a candidate with opposition and on the same ticket with the contestee. This situation certainly provided him with the opportunity to use his influence to affect the result and the result of the balloting disclosed an astonishing majority of those voting for the Republican candidates, when the result of the absentee balloting is compared with the results of the vote at the polls on election day. This discloses a defect in the law regulating absentee voting that should be remedied and such a situation, in my opinion, calls upon those in charge to show that the balloting was fairly conducted and that all the requirements of the law designed to insure its fairness were substantially complied with. Our state constitution contains a guarantee that all elections shall be free and equal and this provision certainly should be construed to require that all elections be conducted fairly. The public is vitally interested in fair elections as well as the candidates who offer for office.

"As I recall the record, the contestant received a majority, though small, of the votes cast at the polls, but of the absentee votes he received less than one in ten votes. In the regular balloting at the polls the Democratic candidate for County Court Clerk received approximately two out of five of the votes cast and tabulated, while of the absentee votes cast and counted he received less than one out of a hundred. This disparity calls for an explanation and I have found no satisfactory or sufficient explanation in the record other than the placing in charge of the balloting a candidate to be voted for and his failure to follow the requirements of the law intended

to insure the integrity of the ballots and fairness in the conduct of the balloting. KRS 116.080 provides that a candidate to be voted for at an election shall be ineligible as an election officer. An officer of election at the polls does not have exclusive conduct of the election in his precinct and it seems that it would be more important to deny to a candidate to be voted for the practically exclusive conduct and supervision of absentee voting.

"If it be conceded that the record does not make out a case of either actual or constructive fraud, we are left with the problem of deciding whether the failures of the Clerk to observe the provisions of the law set out in the complaint are substantial enough to warrant the holding of the absentee balloting invalid. The Clerk's failure in several respects to comply with the statutes is admitted and he attributes this failure to his ignorance of what the law required. He stated that he had never read the law nor had he sought the advice of the County Attorney as to its provisions. That he relied upon the information furnished by one of his deputies, who had been a deputy under his predecessor, as to the duties imposed on him by the law and that she told him the procedure followed by the former county clerk. However, the present clerk was elected for his first term at the November 1945 election and this absentee voters' law was enacted in 1946. It is true that absentee voting for certain U. S. Government officials was authorized by an act of the 1944 legislature, but the procedure provided for in the act was entirely different from the procedure set out in the present absent voter law and bears no resemblance to the procedure adopted by the county clerk here. The only previous absentee voter law that I have found was one passed by the legislature in 1918 and held unconstitutional by the Court of Appeals in 1921. Certainly the Clerk was grossly negligent in not making some other and further effort to ascertain what his duties were.

"The complaint sets out a number of respects in which the clerk failed to follow the requirements of the law and the proof, stipulations and examination of the election records amply sustain the charges or most of them and whether these failures were sufficiently substantial to invalidate the balloting is the real question presented by the record. Some of these requirements may be classed as directory and some, at least one, appears to me to be mandatory; but whether directory or mandatory, since they were intended to provide for the integrity of the balloting and fairness in the election, the law should require a substantial compliance under the circumstances shown here. As said in 29 C.J.S., Elections, § 210:

"'Such statutes confer a privilege and not an absolute right. * * * There should be a substantial compliance with statutory regulations governing absentee voting, as in respect of the application, supporting affidavits, and mode of voting as an absentee; but minor irregularities or technical informalities in such matters are not fatal.'

"The decisions of our Court of Appeals appear to be in line with this statement of the rule.

"Among the irregularities complained of was the failure of the Clerk to comply with KRS 126.240 which required him before sending an absent voter's ballot to any applicant to provide himself with at least one legal ballot box for the absentee ballots same to be locked in the presence of the board of election commissioners. Contestee contends that this was a failure of the Election Commissioners; but the duty of providing the box is imposed on the clerk by the statute. But whether it was the duty of the Clerk of the county court or the duty of the election commissioners, the statute directs that no ballot shall be sent to any applicant until the box is provided. This provision of the statute was entirely disregarded. The Clerk had not only furnished ballots to voters but had received back from the voters a substantial number of ballots, according to the clerk and his deputy thirty to forty ballots, while contestant states that he was advised by the deputy clerk that between sixty and seventy ballots had been returned to the clerk by the absentee voters

who had applied for ballots. Apparently this provision was intended to assure the integrity of the ballots voted and the importance of it is shown by the fact that the record discloses that this substantial number of ballots were returned to the clerk when he had not provided a proper receptacle for them, these ballots being placed by the clerk in a pasteboard box which was kept in the vault adjoining the Clerk's office. Apparently this box was in a place accessible to the public generally and certainly to the absentee voters who personally applied to the Clerk for the ballots and voted them in this vault or room. The clerk testifies that the paper box was kept back about half way the vault on the side setting on some books, back in kinda under a shelf like'. The clerk further testfied when questioned about the ballots of Vernon Warren, Hershel and Violet Milby which he had placed in the box that while he was running through the ballots he discovered these three envelopes did not have the jurat signed. The Clerk certainly had no right to be running through these ballots and this indicates the importance of having the locked ballot box for the reception of these ballots. In this connection it may be noted, as I understood the statement of the clerk, that absentee ballots had been mailed by him to these three absent voters, not on their written application therefor, but at the request of the contestee and Boyce Milby and in this instance or on another occasion that he sent the ballots along with the applications for them to the voters, certainly before the applications were signed. It appears further from the record that all but 17 of the absent voters' ballots were voted in the Clerk's office, and while the statute, KRS 126.230, requires the voter to mark his ballot in the presence of the officer before whom he makes and subscribes to the affidavit on the inner envelope but in such manner as to prevent the officer from knowing how the ballot is marked, the clerk states that the large number of voters who appeared before him to execute this affidavit marked their ballots in a private place, outside of his presence and where he did not see them mark their ballot, and certainly part of this number in the vault where the pasteboard box containing the voted ballots were kept.

"Another irregularity complained of is the failure of the clerk to provide and have printed an appropriate number of outer envelopes for absent voter's ballots. KRS 126.200. This failure to comply with the statute is admitted but it is contended that there is no reason for the use of the outer envelopes. We do not know, of course, the reasons that impelled the legislature to write this provision into the law, but it was evidently intended as an additional means of protecting and preserving the integrity of the ballots. Section 126.230 imposes on the voter the duty, after he has executed the affidavit on the inner envelope, marked his ballot and enclosed it in the inner envelope, to enclose the inner envelope with the ballot in the outer envelope and write his name across the face of the outer envelope. Not only did the clerk fail to discharge the duty imposed on him but all the absentee voters failed to discharge the duties the law required of them in this respect. The failure to have the outer envelopes resulted in the failure of the clerk to observe another duty imposed on him by KRS 126.250, that of stamping on the outer envelopes the day and hour he received same. None of these absent voter ballot envelopes had stamped or written on the envelope in which they were enclosed the day and hour of its receipt except three or four questioned ballots, as I recall. These did have the time of receipt written on the inner envelopes provided. KRS 126.270 provides that the board of election commissioners, before counting and tabulating the absent voter ballots, shall remove from the ballot box, one at a time, the envelopes and before proceeding further examine the outer envelope to determine whether it is in proper form and bears the required stamp of the county court clerk. It is then provided that it may be opened if found to be satisfactory in these respects. This apparently is a condition precedent to counting and tabulating the absentee ballots. This duty imposed on the board was not and could not

have been discharged because of the failure of the Clerk to provide the outer envelopes. The providing of the outer envelopes may have been unnecessary, as contended, but it must have been the purpose of the legislature in requiring it to provide an additional safeguard for protecting the integrity of the absentee ballots.

"The foregoing and a number of other minor irregularities may be classified as directory provisions or requirements. Even so, there was no substantial compliance with the law. But there is relied upon by complainant another requirement, which appears to be mandatory. This violation also is admitted by the clerk. KRS 118.020 provides that all voting for county officers, including others, shall be by secret official ballots, printed and distributed as provided in this chapter, Chapter 118. KRS 118.190 provides the number of ballots the clerk shall have printed and bound and provides for the printing and binding of one book of stubs and ballots for each voting precinct in the county. KRS 126.190 provides that the ballots furnished absent voters shall be taken from the precinct ballot books. I find no authority for the clerk to have additional ballots printed for absentees, yet in this instance without any statutory authority, the clerk had printed four books of ballots containing 150 ballots each to use exclusively for absent voters. The only reason given for this is that the practice had been the custom in the county for a number of years, and the suggestion that to wait for the printing of the regular ballots would have resulted in not having very many absentee votes. If this latter is the correct reason then this disregard of the statute is responsible for much of the majority received by contestee in the absentee voting. KRS 118.280 provides that in the conduct of regular elections at the polls one of the officers of election shall sign his name on the back of the ballot and that no ballot not so signed shall be counted. The Court of Appeals has consistently, so far as I have found, treated this requirement as mandatory and if not complied with the ballots not so signed have

been held invalid. As I see it, this provision that the ballots not so signed shall not be counted is no more mandatory than the provision of KRS 118.020 to the effect that no other ballot shall be used. Using includes a counting of the ballot. If the prohibition is against its being used then *it cannot be counted.*

"Without further discussion of the above and other instances charged of failure to follow the provisions of the law in the conduct of the absentee voting I am of the opinion that the irregularities above mentioned are too substantial for the Court to approve. If approved and the election of contestee upheld it would be an invitation to *every county court clerk in the state to* adopt his own method of procedure in the conduct of absentee voting and would open wide the door to fraudulent practices."

We concur in Judge Spragens' opinion, except to the extent that he holds mandatory the provision of KRS 126.190 that the absentee ballots be taken from the precinct ballot books. We think it was unnecessary to the decision of the case to determine whether this statute is mandatory or merely directory, so we at this time reserve a decision on that question, without expression of opinion as to the correctness of Judge Spragen's view on the question.

Even if KRS 126.190 be treated as being merely directory, the failure to comply with it, when taken with all of the other failures of compliance in this election, created a situation comparable to that in Pickard v. Jones, Ky., 243 S.W.2d 46, 50, in which we said:

"The cumulative effect of the departures by the officers from the clear mandates of the statute is such that we must hold they disfranchised the legal voters or those who cast valid absentee ballots."

While the courts dislike to disfranchise voters due to misconduct of the election officials, it may be pointed out that here the voters, at least those who voted in the clerk's office, could have insisted that the

ballots be taken from the precinct books, that outer envelopes be supplied, and that the ballots be deposited immediately in a ballot box provided for the purpose.

The judgment is affirmed.

DUNCAN, J., not sitting.