Christine CROWE, Appellant,

v.

Grace Rush EMMERT, Appellee.

Court of Appeals of Kentucky.

Oct. 3, 1957.

As Modified on Denial of Rehearing
Oct. 11, 1957.

Carroll M. Redford, Robert C. Carter, Glasgow, for appellant.

Duncan & Huddleston, Parker W. Duncan, Bowling Green, Joe Lane Travis, Tompkinsville, for appellee.

CAMMACK, Judge.

This is an election contest case. It involves the nomination for County Clerk of Monroe County in the Republican Primary held May 28, 1957. The action was in-

stituted by Grace Rush Emmert, the appellee, who was a candidate for the office against the incumbent clerk, Christine Crowe, the appellant, also a candidate for the office. Mrs. Emmert challenged the validity of all of the absentee ballots cast in the county clerk's race. In the voting at the polls Mrs. Emmert received 1,848 votes while Miss Crowe received 1,824 votes. Miss Crowe received 385 of the 408 absentee ballots counted against 15 for Mrs. Emmert. Eight ballots were not marked in the county clerk's race. The trial court found that all of the absentee ballots were illegal and void because numerous irregularities in connection with them amounted to fraud and made it impossible to separate the legal ballots from the illegal ones. The appeal is from that judgment.

Counsel for the appellant contend vigorously that the judgment should be reversed for the reasons set out below, though not in this sequence. The trial court erred (1) in applying the "twenty per cent rule" because the rule is not applicable to primary election contests; (2) in finding fraud rendering all absentee ballots void because the record reflects irregularities less than fraud affecting a known number of absentee ballots; (3) in requiring strict rather than substantial compliance with the absentee voting statutes, KRS, Chapter 126; (4) in placing the burden of proof upon the contestee; (5) in ruling that a county court clerk, who is a candidate, is prohibited by KRS 116.080 from administering oaths to absent voters; and (6) in construing the application of the absentee voting statutes.

We think the trial court made a proper determination of the case, and for reasons hereinafter set forth we deem it unnecessary to attempt a detailed discussion of the several contentions made by the appellant. At the outset we call attention to the absentee voting case of Warren v. Rayburn, Ky., 267 S.W.2d 720, wherein all the absentee ballots cast in the November 1953 general election for Sheriff in Green

County were held to be illegal and void because of numerous irregularities concerning them. The case now before us deals with absentee ballots cast in a primary election. We have here some of the irregularities and violations discussed in the Rayburn case, as well as additional ones,

Counsel for the appellant argue that certain rules applicable to general elections do not apply to primaries, and that the case should be approached from a mathematical point of view. They urge that when this is done, the deduction of the known discredited ballots from Miss Crowe's total vote, including the absentee ballots, would still leave her the winner. On the other hand, counsel for Mrs. Emmert contend that the Rayburn case is controlling and that when all absentee ballots are thrown out she will be the winner.

We are of the opinion that the reasoning and conclusions reached in the Rayburn case should be as applicable to absentee ballots cast in a primary as to those cast in a general election. To vote by absentee ballot is a privilege of the voter and not an absolute right. Admittedly, many difficulties arise in the administration of the absentee voting law. Only a casual reference to KRS, Chapter 126, will show the efforts of the Legislature to provide adequate safeguards to protect the integrity of the absentee ballot. Due to the method of handling absentee ballots through the office of county clerk, absentee voting has both county-wide and precinct characteristics. The absentee voter is not present at the election to see that his ballot is safeguarded properly. Traditionally, the office of county clerk has been one of honor, high trust and great responsibility. The county clerk, in addition to the obligations and duties pertaining to his office, has also a distinct and separate set of duties which are required of him in the handling of absentee ballots. It goes without saying that an incumbent county clerk, who is a candidate for office, finds himself in an extremely high position of trust and

responsibility. Strong reasons could be advanced in support of the view of the trial court that a clerk who is a candidate should not be permitted to administer oaths under the absentee voting law, but we agree with his view that the question is not determinative of this case.

We are unable to see why there should be any distinction drawn between a general election and a primary regarding the duties of a county clerk in connection with absentee ballots. An excerpt from the able opinion of the Special Trial Judge on this question is pertinent here.

" * * * The contestee, Christine Crowe, was the incumbent county court clerk of Monroe County, a candidate for renomination in the Republican primary, and the chief beneficiary of the absentee voting conducted by her office. But the record does not show that the balloting was fairly conducted, nor does it show that all requirements of the law designed to insure its fairness were substantially complied with. On the contrary, there is no conceivable abuse of the absentee-voting statute which is not reflected in this record; and the proved violations of both letter and spirit are so many and so extensive that the touch of fraud, actual or constructive, extends to every ballot, making it impossible to segregate the valid from the invalid. Not only makes it impossible to segregate but unnecessary to do so."

We think there is even more reason in the case before us than there was in the Rayburn case to require those in charge of absentee ballots, the appellant and her deputies, to show that the balloting was conducted legally, and that all requirements of the law to insure its fairness, at least, were met substantially. Under the circumstances, it was the duty of the appellant to go forward with the proof, and the trial court properly so held.

The trial court commented upon the large number of registered nonresidents of Monroe County, notwithstanding a recent purgation of something less than 100 names. He pointed out that Monroe County has a population of approximately 13,000. The number of registered voters is 10,500. It may be of some interest that the 1957 school census of Monroe County shows an enumeration of 3,411. It probably would not be overly presumptious to assume that some part of the total population of 13,000 is made up of children under six years of age. Good arguments could be advanced for the views of the trial court that the absentee voting law was never intended to apply to persons who had moved from the county even though their names might continue to appear on the county's registration lists. The trial court pointed out that the law was meant to apply to a person legally residing in a county in the State who would be denied his right to vote if he expected to be absent from the county in the course of his business or his duties on election day. Admittedly, the problem of residence of an absentee voter often becomes a very difficult one, but we do not deem that question a necessary one in the determination of this case.

Miss Crowe admitted that, even though there had been a recent purgation of the registration lists, many persons whose names remained on the lists had moved away from Monroe County and established new residences. She and others, working out of her office and in her interest in the election, solicited votes from persons who had moved from the county without determining whether they had established a new residence at their present habitation. There were instances where applications and ballots were sent simultaneously to registered voters who were living out of the county. Paul Crowe, one of Miss Crowe's deputies, and others, took applications and absentee ballots to Indianapolis, Louisville and elsewhere. Thus ballots were delivered to voters and votes obtained

in what might be considered (from one point of view) as a rather ingenious and time-saving maneuver—though in utter disregard of the absentee voting law. Some of these ballots were notarized by Paul Crowe either in Indianapolis, where he had no authority to act as a notary, or back in Monroe County out of the presence of the voter.

There were instances where the "Date Received" stamps on the outer envelope of the ballots were marked prior to the date on the applications for ballots. There were other instances where the "Date Received" stamps on the envelope could not have been correct because the postmarks indicated such a speedy delivery to be impossible. Miss Crowe, one of her deputies and others, acting under her direction, admitted to numerous "clerical errors." Many notarizations were proven to be false, and others were shown to be forged. In at least one case Miss Crowe admitted to acknowledging the mark of an illiterate on an application, while the inner envelope affidavit contained no indication that the voter could not write.

A substantial number of ballots showed evidence of changes or erasures, or were marked with more than one instrument, or had checks or dots in or opposite the voting squares. These marks indicated that most of them had been made by some two or three persons. Unsealed envelopes containing ballots were retained in the possession of unqualified persons before they were delivered to the clerk's office as voted ballots. Some of the envelopes showed that they might have been opened and resealed, although those who had handled the ballots swore they had not been tampered with.

Less than 20 per cent of the ballots were forwarded to the clerk's office by United States Mail, as provided by KRS 126.190. Some 200 absentee ballots were voted in the clerk's office. Miss Crowe testified that she prepared lists of absentee voters for each precinct but she did not say she delivered the lists to the precinct officers. KRS 126.180. In no instance were the words "absent voter" written on the primary stub of the precinct ballot book showing the absent voter's name. Miss Crowe or Paul Crowe wrote the voter's name on all of the outer and inner envelopes before issuing any of the ballots. KRS 126.230 requires that the *voter* shall write his name on the outer envelope. No voting instructions were issued.

Counsel for Miss Crowe insist that the irregularities in the handling of the absentee ballots and the actions of those soliciting absentee votes did not constitute fraud, and that the trial court committed grievous error in holding that all the absentee ballots were void. They urge that only 182 (some 40 per cent) of all the absentee ballots cast showed irregularities sufficient to warrant being discredited. They contend that when the 15 absentee ballots voted for Mrs. Emmert are added to her vote of 1,848 received at the regular polling places, she still would be required to discredit an overall number of 346 absentee ballots to receive a majority of one over Miss Crowe, whose total vote was 2,209. These calculations, of course, are based upon the application of a mathematical process which would require a consideration of each absentee ballot to determine whether it was valid or invalid, without regard to irregularities peculiar to all absentee ballots.

For reasons discussed heretofore, we think the contentions of the appellant are without merit. Aside from noted illegalities, other circumstances and conditions pertaining to absentee voting in the county clerk's race in Monroe County at the last May primary amounted to constructive fraud, to say the least. Especially is this true when it is considered that Miss Crowe, the appellee, was a candidate to succeed herself in the office of Clerk. It is of some passing interest that the testimony of the candidate, whom Miss Crowe defeated for

clerk four years ago, showed that she received some 400 votes and he received 8 of the absentee ballots cast.

Lastly, the trial court did not misapply the "twenty per cent rule" because that rule has been followed in primary elections as well as general elections. Smith v. Jones, 221 Ky. 546, 299 S.W. 170. The general effect of that rule is that, where as many as 20 per cent of the votes of a precinct are discredited, the whole precinct is thrown out, and the result of the election changed if the total number of votes in the precinct is sufficient to produce such a result. See Ragan v. Burnett, Ky., 305 S.W.2d 759. In this case some 40 per cent of the absentee ballots were shown to be discredited for specific reasons. Furthermore, we have noted other irregularities peculiar to all the absentee ballots. Even though strict compliance with all of the provisions of the absentee voting law may not be necessary, we think the evidence before us amply supports the finding of the trial court that all the absentee ballots were illegal and void.

Judgment affirmed.

MONTGOMERY, J., not sitting.