Wallace KINCER, Appellant,

v.

Alvin HOLBROOK, Appellee.

Court of Appeals of Kentucky.

Dec. 13, 1957.

F. Byrd Hogg, Whitesburg, J. J. Leary, Frankfort, for appellant.

Bert T. Combs, Prestonburg, Harry M. Caudill, Whitesburg, for appellee.

WADDILL, Commissioner.

Contestant, Alvin Holbrook, and contestee, Wallace Kincer, were opposing candi-

dates for board member of School Division No. 3 in Letcher County at the 1956 general election. In the six precincts composing the Division 800 votes were cast for Holbrook and 792 for Kincer, and of the absentee ballots 34 were received by Kincer and 18 by Holbrook. Thus Kincer's majority was 8 votes according to the result of the election count.

Holbrook filed this contest, averring there were such violations of the statutes in respect to the casting of the absentee ballots as to warrant their being declared void in their entirety. The lower court adjudged that the cumulative effect of all the irregularities incident to absentee voting justified the invalidation of all such votes. Accordingly Holbrook won the office in dispute in the contest below, and Kincer appeals.

The evidence discloses there were many deviations from the clear mandates of the applicable statutes pertaining to absentee voting. We shall not consider each of these alleged irregularities in detail, because it is our view that two of the most important protective features of this law were flagrantly violated in this case. Those were the requirement that the election commissioners be permitted to witness the preparation of the absentee ballot box, and the requirement that the county court clerk relinquish the keys to the box, thus divesting himself of easy and private access to the ballots.

KRS 126.240 is the relevant statute that we believe was departed from and it reads:

"Before sending an absent voter's ballot to any applicant prior to any election, the county court clerk shall provide himself with one or more legal ballot boxes, as may be required. The boxes shall be locked in the presence of the county board of election commissioners, and one of the keys shall be delivered to each member of the county board of election commissioners. The boxes shall remain locked, and the members of the county board of election commissioners shall retain the keys in their possession, until the boxes have been delivered to the county board of election commissioners following the election and opened as provided in KRS 126.270."

█ It is admitted Election Commissioners Collins and Amburgey were not present when the clerk prepared and locked the absentee ballot box, but there is some dispute whether Election Commissioner Moore was present. Moore testified that on the day the box was being made ready he was engaged in the trial of a workmen's compensation case before a referee in the circuit court room. The courthouse janitor came to him and told him the clerk wanted the key to the box. Moore stated he had a number of keys on a ring and was uncertain as to which was the one to the box, so he went to the clerk's office where the clerk removed it and retained it, and then Moore returned to the trial in the circuit court room. Moore said he made no inspection of the box, did not see it locked, and was in the office only for the purpose of having the clerk identify the key. This explanation of Moore was not disputed, and we are of the opinion this was not such a "presence" of an election commissioner as is contemplated by the above statute.

█ It is uncontradicted that all three keys to the ballot box were in the possession of the clerk from October 24th or 25th, when absentee ballots were first deposited in the box, until November 2nd, at which time Election Commissioners Moore and Amburgey received theirs. Election Commissioner Collins received his key after the closing of the polls on election day. There is some conflict in the testimony as to whether Collins made an effort to get his key during this time. The clerk testified he did not, and that it would have been delivered to him had he so requested, while Collins declared he made several efforts to obtain it but the clerk refused to surrender it. Collins also testified that the clerk owned a duplicate set of keys which pre-

sumably he had had made at his own expense and which would have given him access to the contents of the box even at a time when the three commissioners had the regular keys. It is not shown that the clerk denied this statement of Collins.

In an effort to avoid the consequences of the clerk's almost total disregard of the plain provisions of KRS 126.240, Kincer argues that the requirements of this statute are merely directory. Holbrook maintains on the other hand that there should be at least a substantial compliance with the specific terms of the statutory section. We subscribe to the contention advanced by Holbrook.

In 29 C.J.S. Elections § 210(a), pp. 297–298, this statement appears on the precise question raised:

"* * * Such statutes (absent voter laws) confer a privilege and not an absolute right. They should be construed in the light of any constitutional provisions affecting registration and elections, and have been held subject to the rule of *strict construction,* although in the case of absentee voting laws relative to persons in military or naval service a rule of liberal construction has been applied; but it has been held that at least a *substantial compliance* with the provisions of the soldiers' and sailors' absentee voting statute is necessary. * * *" (Italics ours.)

It was held in Stabile v. Osborne, 309 Ky. 427, 217 S.W.2d 980, that there must be substantial compliance with the provisions of the absentee voter law. It is our considered belief that any other ruling would set a very dangerous precedent. On this point we have this pertinent language in Pickard v. Jones, Ky., 243 S.W.2d 46, 48: "The meticulous system recognizes that absentee voting is a risky method. Unless the statutory provisions be strictly followed, there is greater opportunity for persons of evil design to corrupt the ballot."

In administering the absentee voter law it is difficult enough to keep strictly within the language of the Act. This enactment becomes an impossible piece of legislation to supervise if election commissioners and county court clerks are allowed to annex various unwritten amendments to it through custom and usage. The Legislature has attempted to safe-guard the candidate and the voter. The practices revealed in this record strip away all safe-guards, and, in effect, substitute for them only the conscientious scruples of the county court clerk. While these scruples may in some instances be as strong as an oak, in others they may be as weak as a willow, and they offer uncertain security in any event. Our government is founded upon laws, not upon men, and we must not place candidates for public office and voters who support them at the mercy of any public official.

For the reasons indicated we conclude the lower court correctly adjudicated that the absentee ballots involved herein were invalid.

In view of our decision it also becomes unnecessary to consider any of the other questions raised.

Wherefore, the judgment is affirmed.