RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0279p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GENEAL WARF and GLENN GUPTON,
Individually and on behalf of the class of 542
disenfranchised Green County, Kentucky
absentee voters,

     *Plaintiffs-Appellants,*

   *v.*

BOARD OF ELECTIONS OF GREEN COUNTY,
KENTUCKY; CAROLYN SCOTT, Chairperson,
Board of Elections of Green County,
Kentucky; TIMOTHY STUMPH; SAMUEL E.
THOMPSON; JERRY ARNETT, Members, Board
of Elections of Green County, Kentucky;
GREEN COUNTY, KENTUCKY,

     *Defendants-Appellees,*

BILLY JOE LOWE,

   *Intervening Defendant-Appellee.*

No. 09-5265

———————————

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 08-00072—Thomas B. Russell, Chief District Judge.

Argued: January 21, 2010

Decided and Filed: September 1, 2010

Before: MERRITT, MOORE, and GIBBONS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Joseph H. Mattingly III, MATTINGLY & NALLY-MARTIN, PLLC, Lebanon, Kentucky, for Appellants. Bobby H. Richardson, RICHARDSON, GARDNER, BARRICKMAN & ALEXANDER, Glasgow, Kentucky, Harold M. Johns, OFFICE OF THE COUNTY ATTORNEY, Elkton, Kentucky, Jonathan G. Hieneman, HIENEMAN LAW OFFICE, Campbellsville, Kentucky, for Appellees. **ON BRIEF:** Joseph H. Mattingly III, MATTINGLY & NALLY-MARTIN, PLLC, Lebanon,

Kentucky, for Appellants.  Woodford L. Gardner, Jr., RICHARDSON, GARDNER, BARRICKMAN & ALEXANDER, Glasgow, Kentucky, Harold M. Johns, OFFICE OF THE COUNTY ATTORNEY, Elkton, Kentucky, Jonathan G. Hieneman, HIENEMAN LAW OFFICE, Campbellsville, Kentucky, for Appellees.

————————————

**OPINION**

————————————

JULIA SMITH GIBBONS, Circuit Judge.  Plaintiffs-appellants Geneal Warf and Glenn Gupton[1] ("the Warf appellants"), individually and on behalf of a class of 542 absentee voters, appeal the district court's order denying their motion for a preliminary injunction and granting summary judgment to defendants-appellees the Board of Elections of Green County, the Chairperson[2] and Members of the Board of Elections, the county of Green County, Kentucky and Billy Joe Lowe, on the Warf appellants' 42 U.S.C. § 1983 claim of unconstitutional disenfranchisement.  The Warf appellants allege that their voting rights under the Fourteenth Amendment were violated by a Kentucky state trial court judgment that declared void all 542 votes cast by absentee ballot in the 2006 General Election for the office of Green County Clerk.  The district court determined that the Kentucky trial court's decision to void every absentee ballot cast followed Kentucky precedent and therefore did not rely on non-uniform rules, standards, and procedures in violation of due process.

For the following reasons, we affirm the judgment of the district court.

————————————

[1]Washington Vaughn, the representative plaintiff at the start of the litigation, was voluntarily dismissed from the case by the district court on June 9, 2008.

[2]Carolyn Scott, the former Chairperson of the Board of Elections of Green County by virtue of her position as Green County Court Clerk, was named as a defendant in the action in her capacity as chairperson.  Her brief on appeal, filed after her removal from office, adopts the arguments set forth by the Plaintiffs-appellants.

## I.

The facts underlying the voters' challenge arise from the 2006 election for the office of Green County Court Clerk.  The November 7, 2006, general election held in Green County, Kentucky  featured a race for the office of court clerk between the incumbent Democratic candidate, Carolyn Scott ("Scott"), and the Republican challenger, Billy Joe Lowe ("Lowe").  After the polls closed, the Board of Elections of Green County ("Board of Elections") certified Scott as the winner of the election as she received the majority of the total votes cast.  Although Lowe received the majority of votes cast by machine, Scott received enough absentee votes to prove victorious by a margin of 151 votes.[3]

Lowe thereafter filed suit in the Green Circuit Court[4] to contest the election results, claiming that there had been irregularities in the handling of absentee voting during the election.  Lowe alleged that Scott, who had served one four-year term as clerk prior to the 2006 election and had  previously served for twenty-eight years as deputy clerk, engaged in multiple improprieties including affixing campaign materials to absentee voting applications that were sent to prospective absentee voters and placing the absentee voting machine in her personal office instead of elsewhere in the clerk's

---

[3]The results of the machine totals and absentee ballots are as follows:

|                    | Machine Total | Absentee Total | Total Votes |
|--------------------|---------------|----------------|-------------|
| Carolyn Scott (D)  | 2,172         | 364            | 2,536       |
| Billy Joe Lowe (R) | 2,207         | 178            | 2,385       |

[4]Pursuant to Ky. Rev. Stat. Ann. § 120.155:

> Any candidate for election to any state, county, district or city office (except the office of Governor, Lieutenant Governor, member of the General Assembly, and those city offices as to which there are other provisions made by law for determining contest elections), for whom a number of votes was cast equal to not less than twenty-five percent (25%) of the number of votes cast for the successful candidate for the office, may contest the election of the successful candidate, by filing a petition in the Circuit Court of the county where the contestee resides . . . .

The action then proceeds as an equity action before the Circuit Court, which may either "adjudge that there has been no election" upon a finding of "fraud, intimidation, bribery or violence in the conduct of the election so that neither contestant nor contestee can be judged to have been fairly elected" or may adjudge "one of the parties . . . to be elected to the office." Ky. Rev. Stat. Ann. § 120.165(4).

office.  Lowe sought to have all 542 absentee ballots cast in the election declared void and be certified the winner of the election.

On June 2, 2007, a special judge of the Green Circuit Court issued findings of fact, conclusions of law, and final judgment in the case.  The court determined that Scott had placed campaign stickers on the outside of at least thirteen envelopes containing absentee ballot applications—not the absentee ballots themselves—between September 19 and October 9, 2006.  Prior to sending out the ballot applications, Scott had sought legal advice and was advised by a local attorney that "inasmuch as the envelopes contained applications and not ballots there would be no problem" in placing the stickers on the envelopes.  On October 9, 2006, however, Scott received a telephone call from the Kentucky Attorney General's Office about the practice and subsequently stopped using the campaign stickers.  On October 16, 2006, Scott received a letter from that same office advising her that the use of campaign stickers on official correspondence sent from her office was, at a minimum, inappropriate.  The court further determined that Scott had placed the absentee voting machine in her personal office rather than elsewhere in the clerk's office and that the door to Scott's office was closed at times when other persons, including potential absentee voters, were in Scott's office with her.

The court then concluded that Scott's conduct amounted to "two distinct election irregularities."  First, Scott "used county funds to promote her own campaign by sending campaign stickers on absentee ballot applications" in violation of, "at a minimum," Ky. Rev. Stat. Ann. § 117.085(2), which prescribes the form for transmitting absentee ballot applications and absentee ballots.[5]  Second, "Scott improperly used her office by placing

---

[5]Section 117.085(2) provides:

The clerk shall type the name of the voter permitted to vote by absentee ballot on the application form for that person's use and no other.  The absentee ballot application form shall be in the form prescribed by the State Board of Elections, shall bear the seal of the county clerk, and shall contain the following information: name, residential address, precinct, party affiliation, statement of the reason the person cannot vote in person on election day, statement of where the voter shall be on election day, statement of compliance with residency requirements for voting in the precinct, and the voter's mailing address for an absentee ballot.  The form shall be verified and signed by the voter.  A notice of the actual penalty provisions in [Ky. Rev. Stat. Ann. §] 117.995(2) and (5) shall be printed on the application.

the absentee voting machine within her personal office, affording her the powerful opportunity to influence potential voters as they made use of the machine." The court then identified the case as one "fall[ing] into a very special category of election contest cases," in that it involved allegations that an incumbent clerk misused her own office to her electoral advantage. The court reviewed Kentucky law involving county-clerk election contests and concluded that precedent placed upon Scott, as the incumbent clerk, "the burden of showing 'that the balloting was conducted legally, and that all requirements of the law to insure its fairness, at least, were met substantially.'" *See Crowe v. Emmert*, 305 S.W.2d 272, 274 (Ky. 1957). Because Scott could not meet this burden, and in light of the court's finding that Scott's conduct "so tainted the entirety of the absentee ballots cas[t] via machine and paper in the election for the office of Green County Court Clerk . . . [such that it] call[s] into question the integrity of all said ballots," the court voided all 542 absentee ballots cast and declared Lowe to be the "Winner."

Scott thereafter filed an appeal with the Court of Appeals of Kentucky, which dismissed her appeal as untimely. Scott's subsequent petition for discretionary review was denied on December 10, 2008.

While Scott's Petition for Discretionary Review was pending before the Kentucky Supreme Court, the Warf appellants filed the instant action in federal court. The Warf appellants moved for a preliminary injunction to enjoin the Board of Elections from enforcing the judgment of the Kentucky trial court. The appellees thereafter moved for summary judgment and dismissal. On March 3, 2009, the district court granted summary judgment in favor of the appellees and denied the Warf appellants' request for injunctive relief. *Warf v. Bd. of Elections*, No. 1:08-cv-72-R, 2009 WL 530666 (W.D. Ky. Mar. 3, 2009). The district court determined that the Kentucky trial court "did not stray from past Kentucky precedent and that the burden of proof was properly placed on the incumbent clerk" and that there was no indication that the Kentucky court had "relied on 'non-uniform rules, standards, and procedures'" in deciding to void the absentee

ballots. *Id.* at *6. The district court therefore concluded that a constitutional violation had not been established and declined to intervene in the matter. *Id.*

The Warf appellants timely appealed.

## II.

On March 25, 2009, the Warf appellants filed a motion before this court seeking certification of a question of law to the Kentucky Supreme Court. They sought to certify the question of:

> Whether Kentucky law provides an exception to the general rule that in a Regular Election Contest the burden of proof rests with the contestant, thus re-assigning the burden of proof to the contestee in circumstances where the contestee is the incumbent county clerk.

The Warf appellants concurrently filed a similar Petition for Certification of Law before the Kentucky Supreme Court. That petition was denied by the Kentucky Supreme Court on October 1, 2009.

"The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." *Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447, 449–50 (6th Cir. 2009) (quoting *Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995)) (internal quotation marks omitted). "Certification is most appropriate when the question is new and state law is unsettled," but the "federal courts generally will not trouble our sister state courts every time an arguably unsettled question comes across our desks." *Id.* (citations and internal quotation marks omitted).

Certification of the question presented here is inappropriate under the circumstances. As noted above, the Kentucky Supreme Court has already denied the appellants' request to certify the question. The appellants also did not raise the certification request before the district court, therefore causing that court to expend considerable time and resources addressing the question. *See id.* at 450. Finally, there is applicable Kentucky precedent to guide our consideration of the issues before us. For these reasons, we deny the certification motion and will resolve the case on its merits.

## III.

This court reviews a district court's grant of summary judgment *de novo*. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008); *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (*en banc*). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In order to defeat a summary judgment motion, the nonmoving party "must show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The right to vote is a fundamental right, 'preservative of all rights.'" *League of Women Voters v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)). Because "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964). The Constitution, however, "'leaves the conduct of state elections to the states.'" *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005) (quoting *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980)). The "[p]rinciples of federalism," therefore, "limit the power of federal courts to intervene in state elections." *Id*. at 94 (quoting *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992)) (internal quotation marks omitted). Courts "have long recognized that not every state election dispute implicates federal constitutional rights." *Burton*, 953 F.2d at 1268. As such, "'[o]nly in extraordinary circumstances will a challenge to a state [or local] election rise to the level of a constitutional deprivation.'" *Shannon*, 394 F.3d

at 94 (quoting *Curry v. Baker*, 802 F.2d 1302, 1314, (11th Cir. 1986)) (alteration in original).

We have held that "[t]he Due Process clause is implicated, and §1983 relief is appropriate, in the exceptional case where a state's voting system is fundamentally unfair." *Brunner*, 548 F.3d at 478 (citing *Griffin v. Burns*, 570 F.2d 1065, 1078–79 (1st Cir. 1978)). "[D]ue process is implicated where the entire election process including as part thereof the state's administrative and judicial corrective process fails on its face to afford fundamental fairness." *Griffin*, 570 F.2d at 1078. Such an exceptional case may arise, for example, if a state employs "non-uniform rules, standards and procedures," that result in significant disenfranchisement and vote dilution, *Brunner*, 548 F.3d at 478, or significantly departs from previous state election practice, *see Roe v. Alabama*, 43 F.3d 574, 580–81 (11th Cir. 1995) (intervening where failure to exclude contested absentee ballots constituted a post-election departure from previous state practice); *Griffin*, 570 F.2d at 1079 (intervening where state court disrupted seven-year practice of voting by absentee and shut-in ballot). Federal courts, however, "have uniformly declined to endorse action[s] under [§] 1983 with respect to garden variety election irregularities." *Griffin*, 570 F.2d at 1076; *see also Brunner*, 548 F.3d at 478 ("[T]he federal courts should not be asked to count and validate ballots and enter into the details of the administration of the election." (citation and internal quotation marks omitted)).

It is evident from the record that the Green Circuit Court's decision to void all of the absentee ballots cast altered the outcome of the election and resulted in significant disenfranchisement. The decision impacted eleven percent of the voting electorate and resulted in Lowe's being declared the winner. *See Warf*, 2009 WL 530666, at *1. While this level of impact may be sufficient to warrant federal intervention, the result must rise to the level of fundamental unfairness. *See Griffin*, 570 F.2d at 1078–79 (describing disenfranchisement of almost "ten percent of the qualified and voting electorate" as "one of the perhaps exceptional cases where a district court could properly exercise the limited supervisory role that such courts have in election cases."). The question is therefore whether the court's decision to void the absentee ballots amounted to an

"officially-sponsored election procedure which, in its basic respects, was flawed" to the level of fundamental unfairness. *Id.* at 1078.

The Green Circuit Court reviewed state precedent and concluded that the "case [fell] into a very special category of election contest cases" because it involved an interested incumbent clerk charged with "misus[ing] her own office to her political advantage." The court, relying on *Crowe*, noted that an incumbent clerk "has the burden of showing 'that the balloting was conducted legally and that all requirements of the law to insure its fairness, at least, were met substantially.'" *See* 305 S.W.2d at 274. The court then described its conclusions regarding the alleged election irregularities. It concluded that "[t]here is no question that Scott included campaign advertising materials with absentee ballot applications," and that such activity "is prohibited by statute, and cannot be tolerated." It further concluded that "Scott . . . by her own testimony, placed herself in a precarious position by locating the absentee ballot machine in her personal office." As a result, according to the Green Circuit Court, *Crowe* placed on Scott the burden to show that she had not "improperly influenced any specific voter." The court determined that Scott could not "meet her burden . . . because [she] failed to put in place any appropriate checks and balances to prevent her own overreaching." Rather, despite the fact that "[t]he full extent to which Scott was successful in influencing the number of absentee votes cas[t] in her favor cannot be determined," her conduct "so tainted the entirety of the absentee ballots cas[t] . . . that [it] call[ed] into question the integrity of all said ballots."

The Warf appellants contend that the decision was a clear departure from precedent because it improperly reassigned the burden of proof in the election contest from the contestant to the incumbent-clerk contestee. According to the appellants, the burden of proof in a Kentucky election contest has always been upon the contestant, regardless of whether the actions of an incumbent county clerk are challenged. *See Gross v. West*, 283 S.W.2d 358 (Ky. 1955). They argue that rather than creating an exception for cases involving incumbent county clerks, *Crowe* merely applied long-standing rules that shift the burden of proof to the contestee only where the contestant's

proof is so compelling that without some contrary showing by the contestee, no reasonable fact-finder could fail to find for the contestant.[6] Finally, the Warf appellants contend that the remedy imposed by the Green Circuit Court—the voiding of all absentee ballots—was unprecedented, and that the proper course of action would have been to void the entire election.

While it appears that the Green Circuit Court may have misinterpreted *Crowe* on the issue of which party bore the ultimate burden of persuasion in the election contest, we do not believe that, given the shifting burden of production under Kentucky law in this context and the evidence of irregularities identified by the court, the Green Circuit Court's decision in this case was an unreasonable application of controlling law rising to the level of fundamental unfairness.

The Warf appellants are correct that the burden of proof in state election contests generally falls upon the contestant. *See, e.g.*, *Gregory v. Stubblefield*, 316 S.W.2d 689, 691 (Ky. 1958), *overruled on other grounds by Upton v. Knuckles*, 470 S.W.2d 822 (Ky. 1971); *Gross*, 283 S.W.2d at 360–61; *see also* Ky. Rev. Stat. Ann. § 120.165(2) (providing that the contestant in election contests must produce his evidence in chief within thirty days); Ky. R. Civ. P. 43.01 (setting out the general burden of proof in civil litigation). And the appellants are also correct that Kentucky election law presumes that elections are valid and that elections returns are regular. *See McIntosh v. Helton*, 828 S.W.2d 364, 366 (Ky. 1992); *Gregory*, 316 S.W.2d at 691.

The Kentucky courts, however, have repeatedly held that a challenge to the actions of an incumbent county clerk regarding absentee ballots should receive particularly close scrutiny. *See  Parrigin v. Sawyer*, 457 S.W.2d 504, 508 (Ky. 1970); *Arnet v. Hensley*, 425 S.W.2d 546, 553 (Ky. 1968); *Crowe*, 305 S.W.2d at 273–74. They have explained that when an incumbent clerk is a candidate for re-election, he "finds

---

[6]*See* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 9.00(2)(f) (4th ed. 2003) ("This so-called shifting process is well established in the law of Kentucky. . . . The [Kentucky] Supreme Court . . . [has left] no doubt that the burden of going forward with evidence may shift back and forth during the course of trial.").

himself in an extremely high position of trust and responsibility," *Parrigin*, 457 S.W.2d at 508 (quoting *Crowe*, 305 S.W.2d at 273–74), and that irregularities in absentee ballot procedures "cannot be tolerated, especially when they are committed by a candidate and obviously inure to his advantage." *Id.* The Kentucky courts have therefore "require[d] those in charge of absentee ballots . . . to show that the balloting was conducted legally, and that all the requirements of the law to insure its fairness, at least, were met substantially." *Crowe*, 305 S.W.2d at 274. This requirement has included placing upon the incumbent county clerk "the duty . . . to go forward with the proof." *Id.*

Although this broad language from *Crowe* may appear at first glance to place the full burden of proof—that is, both the burdens of production and persuasion—on the contestee where he is the incumbent county clerk, *id.* at 274, an examination of *Crowe* reveals that Kentucky law merely shifts the burden of production only after a showing of irregularity has been made. In *Crowe*, it was only upon the court's reciting the trial court's conclusion that there were "proved violations of both letter and spirit" of the election laws at issue that the court discussed burden shifting:

> We think there is even more reason in the case before us than there was in the [*Warren v.*] *Rayburn*[, 267 S.W.2d 720 (Ky. 1954),] case to require those in charge of absentee ballots, the appellant and her deputies, to show that the balloting was conducted legally, and that all requirements of the law to insure its fairness, at least, were met substantially. Under the circumstances, it was the duty of the appellant to go forward with the proof, and the trial court properly so held.

305 S.W.2d at 274. Though the district court concluded that, through this language, "the Court of Appeals of Kentucky explicitly placed the burden of proof on the incumbent clerk in election contests for county clerk involving absentee ballot irregularities," *Warf*, 2009 WL 530666, at *6, we believe that the *Crowe* court did not go so far as to shift the burden of persuasion from the contestant to the contestee. Rather, we read *Crowe* to hold simply that, once the contestant has made a showing of irregularity, the incumbent-clerk contestee must then come forward with evidence of substantial compliance with balloting procedures. *See Crowe*, 305 S.W.2d at 274. In other words, after the

contestant demonstrates that election irregularities have occurred, the court shifts the burden of production to the incumbent-clerk contestee on the issue of substantial compliance with the law.

It is debatable whether the Green Circuit Court shifted the full burden of persuasion or only the burden of production to Scott upon its findings of irregularities. The court's language speaks in broad terms about the burden shifting in this case. After concluding that Scott's placing of the absentee polling machine in her personal office "placed her in a precarious position," for example, the court described its view of the burden of proof:

> Lowe cannot prove that Scott improperly influenced any specific voter. Neither, however, can [Scott] prove that she did not. According to the *Crowe* precedent, as stated above, the burden on this issue rests squarely on Scott's shoulders because of the distinct position of trust she holds as the incumbent clerk. She cannot meet her burden. Lowe must therefore win because Scott has failed to put in place any appropriate checks to prevent her own overreaching.

This language, unfortunately, does not clearly delineate the type of burden shifting employed by the court.

We need not determine this question with precision, however, because it is evident from the record that Scott could not meet even her burden of production given the demonstrated irregularities in the absentee balloting. The court found that the evidence before it showed irregularities both with respect to Scott's sending campaign materials with absentee ballot applications and Scott's locating the absentee polling machine in her personal office. On the latter, the court took particular concern in the fact that "Scott lost the regular machine voting and then won the absentee voting by a margin of two to one." The court then concluded that because the evidence showed that Scott had opportunities to influence potential absentee voters, and "Scott failed to put in place any appropriate checks and balances," the absentee ballots were tainted. We believe these conclusions to be reasonable, based on the evidence before the court, and permissible under Kentucky election law. *See Rayburn*, 267 S.W.2d at 721–24 (finding

both opportunity to influence and actual proven and admitted irregularities enough to require incumbent county clerk contestee to show substantial compliance with laws); *Pickard v. Jones*, 243 S.W.2d 46, 49 (Ky. 1951) (holding proven violation of law requiring counting of absentee votes in public presented "too great an opportunity for the perpetration of fraud for the courts to ignore them"). Because we conclude that the result reached by the Green Circuit Court was proper even under the appropriate burden-shifting framework, this cannot be considered "the exceptional case where [the] state's voting system is fundamentally unfair." *Brunner*, 548 F.3d at 478 (citing *Griffin*, 570 F.2d at 1078–79).

As for the Warf appellants' challenge to the remedy devised in this case, in each of the cases deciding challenges to incumbent county clerks' handling of absentee balloting, the Kentucky courts have permitted the voiding of all absentee ballots. *See Parrigin*, 457 S.W.2d at 508; *Arnett*, 425 S.W.2d at 553; *Crowe*, 305 S.W.2d at 276. Indeed, it appears that in several other cases involving absentee ballot irregularities the Kentucky courts have determined that the voiding of absentee ballots was the appropriate remedy. *See Hale v. Goble*, 356 S.W.2d 33, 35 (Ky. 1962); *Kincer v. Holbrook*, 307 S.W.2d 922, 924 (Ky. 1957); *Pickard*, 243 S.W.2d at 49–50. In *Kincer*, for example, the Kentucky Court of Appeals considered a county clerk's failure to properly lock the absentee ballot box and the fact that he had sole possession of all duplicate sets of keys for the ballot box. 307 S.W.2d at 923. The court noted that "[t]he meticulous system [created by the absentee voter law] recognizes that absentee voting is a risky method. Unless the statutory provisions be strictly followed, there is greater opportunity for persons of evil design to corrupt the ballot." *Id.* at 924 (citation and internal quotation marks omitted). It then affirmed the trial court's decision to invalidate the absentee ballots. *Id.*

It is therefore evident that the Green Circuit Court's decision to void all absentee ballots cast in the election reasonably applied applicable Kentucky case law.[7] The court appropriately looked to analogous state cases and applied the careful scrutiny to incumbent county clerks described therein. We therefore cannot conclude that Green Circuit Court's decision to void the absentee ballots in this case rises to a level of fundamental unfairness in violation of Due Process.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

---

[7]The Warf appellants urge us to consider *McClendon v. Hodges*, a recent election case from the Kentucky Supreme Court that discussed the standards by which courts should determine whether to eliminate ballots or declare an entire election void. *See* 272 S.W.3d 188 (Ky. 2008). In *McClendon*, the Kentucky Supreme Court wrote:

> Though Kentucky courts are reluctant to declare an election void, our case law has long established that this extreme remedy is nonetheless necessary when it is impossible to fairly discern a winner. The established rule is that where, after giving the evidence of fraud (or irregularities) its fullest effect, and fraudulent or illegal votes may be eliminated, and *the result of the election be fairly ascertained from votes which were regular or untainted*, the court should not go to the extreme of declaring the election void. Even when evidence of fraud is limited to only a portion of the electorate or to specific precincts, it may nonetheless be necessary to set aside the entire election.

*Id.* at 191-92 (citations and internal quotation marks omitted) (emphasis in original).

While this case may bring some well-needed clarity to this area of the law, the decision was not before the Green Circuit Court at the time it decided the underlying case. As such, we do not consider it. Our task is not to determine what would be the correct outcome under current Kentucky law; rather, our review is limited to whether the Green Circuit Court's decision rendered the state's voting system fundamentally unfair. *Brunner*, 548 F.3d at 478.