**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Plaintiff–Appellant,

v.

**STAR FIRE COALS, INC.,**
Defendant–Appellee.

**No. 87–6039.**

United States Court of Appeals, Sixth Circuit.

Argued July 21, 1988.

Decided Aug. 31, 1988.

Larry C. Deener, Landrum, Shouse and Patterson, Lexington, Ky., Jeffrey Silber-

---

feld (argued), Emily H. Levin, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for plaintiff-appellant.

Charles E. Shivel, Jr., Stoll, Keenon and Park, Lexington, Ky., Diane M. Carlton (argued), for defendant-appellee.

Thomas W. Brunner, Laura A. Foggan, Marilyn E. Kerst, Wiley, Rein, & Fielding, Washington, D.C., for amicus curiae, Ins. Environmental Litigation Ass'n.

Before MARTIN and WELLFORD, Circuit Judges, and JARVIS, District Judge.[*]

BOYCE F. MARTIN, JR., Circuit Judge.

The single issue raised in this appeal requires us to interpret a clause in an insurance policy issued by United States Fidelity & Guaranty to Star Fire Coals, Inc., which clause attempts to exclude coverage for certain damages caused by pollution discharges. USF & G seeks in this declaratory action a declaration of rights under the policy it had issued to Star Fire. The district court granted on August 14, 1987, summary judgment to Star Fire. We reverse.

The relevant facts in this appeal are not in dispute. This declaratory action arises out of a lawsuit brought against Star Fire by Angus Rouse, entitled *Rouse v. Star Fire Coals, Inc.*, No. 84–CI453 in Perry Circuit Court in the Commonwealth of Kentucky. Mr. Rouse, who resides near a coal tipple operated by Star Fire, has alleged that he sustained personal bodily injury and damage to his property by the emission of excessive amounts of coal dust from the tipple during the course of its operation. On May 17, 1985, USF & G brought suit pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201 seeking a declaration that the pollution exclusion contained in its insurance policy relieved them of any obligation to defend or indemnify Star Fire in the context of the *Rouse* action.

Mr. Rouse has alleged that Star Fire "on numerous occasions" operated the coal tipple in such a manner as to cause "excessive and unreasonable" amounts of coal dust to be emitted into the atmosphere. This dust allegedly drifted over and fell onto his property causing him to suffer injuries and property damage. The coal tipple at issue here, where coal is crushed and loaded, is located in Bulan, Kentucky. Star Fire processed sufficient coal at this tipple to enable it to ship out five or six sixty-car trains each week.

It is undisputed that coal dust was generated by the normal operation of the tipple and was routinely discharged on a regular, continuing basis. Mr. Rouse has testified that the problem of discharged coal dust had in fact worsened during the past seven or eight years. Much of the coal dust was discharged when crushed coal was dropped from a conveyor belt onto a stockpile of crushed coal. It is also undisputed that Star Fire was aware of the problems caused by the discharge of coal dust and took various steps to minimize the problem. In particular, Star Fire installed water spray systems to help cure the problem of excessive dust emissions. The regular and ongoing nature of the discharge of coal dust from the tipple is further evidenced by the series of citations for fugitive dust emissions issued to the Star Fire tipple by the Kentucky Division of Air Pollution Control.

Despite Star Fire's attempts to control the discharge of coal dust from the tipple, it was not able to control consistently the amount discharged. When a nearby landowner, Mr. Rouse, brought an action seeking damages and an injunction against Star Fire, Star Fire sought coverage under a comprehensive general liability policy issued by USF & G.

The USF & G policy was effective from February 1, 1984, to October 3, 1984, when it was cancelled. The core provision of the policy issued by USF & G provides that:

[*] The Honorable James H. Jarvis, II, United States District Judge for the Eastern District of Tennes-see, sitting by designation.

The company will pay on behalf of the *Insured* all sums which the *Insured* shall become legally obligated to pay as damages because of

A. *bodily* or

B. *property damage*

to which this insurance applies caused by an *occurrence,* and the Company shall have the right and duty to defend any suit against the *Insured* seeking damages on account of such *bodily injury* or *property damage,*

(emphasis in policy)

The term *"occurrence"* in the USF & G policy is defined as follows:

"occurrence" means an accident including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the Insured.

(emphasis in policy)

The USF & G policy also contains a pollution exclusion, which provides, in its entirety, that the policy does not apply:

to *bodily injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(emphasis in policy)

We turn now to the single question of whether USF & G is obligated to defend and indemnify Star Fire in the *Rouse* action under the terms of its comprehensive general liability policy.

■ The parties are in agreement that Kentucky law controls the resolution of the question before us in this diversity action. As we have recognized before, "it is settled Kentucky law ... that the court must give all terms their plain meanings and not rewrite an insurance contract to enlarge the risk." *United States Fire Insurance Co. v. Kentucky Truck Sales, Inc.,* 786 F.2d 736, 739 (6th Cir.1986); *Simon v. Continental Insurance Company,* 724 S.W.2d 210, 213 (Ky.1987). Courts in Kentucky are required to examine insurance policies as complete instruments to determine the extent of the coverage offered. *Grimes v. Nationwide Mutual Insurance Co.,* 705 S.W.2d 926, 931 (Ky.App.1986). Ambiguous language in an insurance contract, however, will be construed in favor of the insured. The canon of construing insurance provisions in favor of the insured operates, however, only where there is latent ambiguity. It must not become an overarching policy determination justifying the use of tortured logic to find ambiguity where in fact none exists. *Hartford Accident and Indemnity Co. v. Western Fire Insurance Co.,* 196 F.Supp. 419, 424 (E.D. Ky.1961); *United States Fidelity & Guaranty Co. v. Lairson,* 271 S.W.2d 897, 898 (Ky.1954).

The core provision of the insurance policy defines "occurrence" by reference to those accidents or conditions that result in damage that was "neither expected nor intended from the standpoint of the Insured." This provision of the insurance policy does not have a temporal component and focuses only on the insured's expectations regarding damages. Thus, conditions that take place over a significant period of time but which cause damage that was unexpected fall within the definition of an "occurrence" and, as a preliminary matter, are entitled to coverage. In the case at hand, we assume without deciding that there has been an "occurrence."

The insurance policy restricts the broad sweep of the "occurrence" definition, however, through a pollution exclusion that provides limits on the coverage provided by the insurance policy. The pollution exclusion at issue here provides that the policy does not apply to injuries or damage arising from the discharge or release of pollutants. It is clear that this first half of the pollution exclusion clause calls off any obligations to provide coverage in cases such as this where the damages are caused by the discharge of coal dust. The pollution exclusion provision does, however, contain

an exception. This exception states that "this exclusion does not apply if such discharge, dispersal, release or escape is *sudden* and *accidental*." (emphasis added)

USF & G argues on appeal that the district court erred when it apparently found that Star Fire was entitled to the benefits of this insurance policy because the pollution exclusion provision had been called off by this exception. Star Fire responds that the three pertinent policy provisions, particularly the "occurrence" definition containing the term "accident," and the "pollution exclusion" provision containing the phrase "sudden and accidental," create a "circle of ambiguity." By including forms of the word "accident" in both clauses, Star Fire argues that USF & G has created a latent ambiguity in this insurance contract and, therefore, Star Fire is entitled to coverage, given that such ambiguities are to be construed in favor of the insured. We disagree with the analysis of the district court and the arguments offered by Star Fire and, therefore, reverse.

We do not find the pollution clause to be riddled with ambiguities despite the best efforts of Star Fire to create them. Specifically, we believe the district court erred when it treated the pollution exclusion and the "occurrence" definition provisions as interchangeable. Though the district court recognized that the issue before it was "whether Star Fire's release of coal dust falls within the policy exclusion provision," the court failed to explicate the language of the exclusion and ruled in favor of Star Fire on the basis of the "occurrence" definition. We have no difficulty reconciling the two provisions. We believe the "occurrence" definition results in a policy that provides coverage for continuous or repeated exposure to conditions causing damages in all cases except those involving pollution, where coverage is limited to those situations where the *discharge* was "sudden and accidental." We fully agree with the conclusion that this "language is clear and plain, something only a lawyer's ingenuity could make ambiguous." *American Motorists Insurance Co. v. General Host Corp.*, 667 F.Supp. 1423 (D.Kan.1987). "It's strange logic to perceive ambiguity"

in this clause. *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E.2d 374 (1986).

■ We believe the everyday meaning of the term "sudden" is exactly what this clause means. We do not believe that it is possible to define "sudden" without reference to a temporal element that joins together conceptually the immediate and the unexpected. It must also be emphasized that the focus of this "sudden and accidental" exception to the general pollution exclusion clause is on the nature of the discharge of the pollution itself, not on the nature of the damages caused.

■ We believe that the phrase "sudden and accidental" is not a synonym for "unexpected and unintended," and that it should not be defined by reference to whether the accident or damages were expected. That precise argument has been rejected by numerous other courts and we join them today. As the court in *Waste Management* explained:

An accurate construction of "sudden" however, must go beyond semantics: all three terms [occurrence, sudden, and accidental] must be read within their contexts. "Occurrence" relates to the anticipation of an event—whether or not it was intentional or expected. The pollution exclusion relates chiefly to the fact that the release allegedly results in some polluting or contaminating damage. The [sudden and accidental] exception also describes the event—not only in terms of its being unexpected, but in terms of its happening instantaneously or precipitantly. Courts that have construed "sudden" broadly, defining it in terms of the expectation element of accident rather than focusing on its temporal significance, have deemed polluting events excepted [from the exclusion] that otherwise appear to fit squarely within the exclusion.

340 S.E.2d at 382. Similarly, in *Borden, Inc. v. Affiliated FM Insurance Company*, 682 F.Supp. 927 (S.D.Ohio 1987), the court wrote:

"Sudden" in its common usage, means "happening without previous notice or

with very brief notice," while "accidental" means "occurring sometimes with unfortunate results by chance alone." The meaning of these terms is clear and should not be twisted simply to provide insurance coverage when the courts deem it desirable.

at 930. Thus, we believe that such pollution exclusion clauses apply to the release of wastes and pollutants taking place on a regular basis or in the ordinary course of business.

In the case at hand, coal dust was discharged from Star Fire's tipple on a regular ongoing basis over a seven to eight-year period as a normal part of the coal processing operation. We believe it is impossible to characterize these discharges of coal dust as "sudden" within the plain and obvious meaning of that term. While the district court may have been correct that the damage resulting from the discharges were unintended and unexpected, that is not the ultimate question. The ultimate question is whether the *discharges* of coal dust were sudden and accidental; they clearly were not. As a result, we conclude that the pollution exclusion clause calls off any coverage that the "occurrence" clause may have initially indicated USF & G owed to Star Fire. The "sudden and accidental" exception to that exclusion is inapplicable here where the pollutants at issue were discharged on a regular ongoing basis.

Accordingly, we reverse the decision of the district court and hold that USF & G is not obligated to defend or indemnify Star Fire in connection with the *Rouse* action.