**TRANSAMERICA INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**DURO BAG MANUFACTURING COMPANY, Defendant–Appellant.**

No. 93–6218.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 17, 1995.

Decided Feb. 16, 1995 *.

* This decision was originally issued as an "unpublished decision" filed on February 16, 1995. On March 23, 1995, the court designated the opinion as one recommended for full-text publication.

David A. Brill, Goldberg & Simpson, Louisville, KY.

David P. Cutler (argued and briefed) and Edwin J. Hull, Goggins, Cutler & Hull, Chicago, IL, for plaintiff-appellee.

Thomas C. Hill, Taft, Stettinius & Hollister, Cincinnati, OH, Catherine J. Serafin, James R. Wagner (briefed), Anderson, Kill, Olick & Oshinsky, Washington, DC, and Eugene R. Anderson (argued), Anderson, Kill, Olick & Oshinsky, New York City, for defendant-appellant.

Douglas W. Becker (briefed), Becker, Farris & Gallagher, Louisville, KY, Daniel I. Davidson (argued and briefed), Russell F. Smith, III, Spiegel & McDiarmid, Washington, DC, Zachary M. Kafoglis (briefed), Satterfield & Kafoglis, Bowling Green, KY, and Laura A. Foggan (briefed), Wiley, Rein & Fielding, Washington, DC, for amici curiae.

Before: ENGEL, KENNEDY, and SUHRHEINRICH, Circuit Judges.

KENNEDY, Circuit Judge.

In 1989, the Environmental Protection Agency ("EPA") sued defendant, Duro Bag Manufacturing Company, seeking to hold it liable for the costs of cleaning up environmental damage at a Kentucky landfill. Defendant notified its insurer, plaintiff Transamerica Insurance Company, of the suit and sought coverage. Plaintiff denied coverage and filed the instant declaratory judgment

action, seeking a court order holding that the pollution exclusion clause contained in the policy bars coverage. The District Court granted summary judgment in favor of plaintiff, and defendant now appeals. We affirm.

## I.

From 1973 to 1979, defendant deposited drums and fiberboard barrels containing ink and glue at the Newport landfill in Kentucky. In 1989, the EPA filed suit against defendant, seeking to hold the company liable for the costs of the clean-up. Defendant's insurer denied coverage and filed the instant declaratory judgment action. This action was stayed pending the outcome of the EPA suit. After the EPA and defendant negotiated a settlement for $350,000, the stay was lifted, and the parties filed cross-motions for summary judgment. The key dispute revolves around the meaning of the phrase "sudden and accidental" in the pollution exclusion clause. Interpretation of insurance contracts is, of course, a matter of state law, and defendant asked the District Court to certify this question to the Kentucky Supreme Court.

The District Court initially agreed, but revoked that consent when the parties were unable to agree on a certification order. The District Court then proceeded to rely on Sixth Circuit precedent to hold that the meaning of "sudden and accidental" was unambiguous under Kentucky law and that the pollution exclusion clause applied to the facts at hand. Defendant now appeals.

## II.

### A. Certification

■ Defendant complains that the District Court erred in not certifying this question to the Kentucky Supreme Court and filed a motion asking this Court to certify the question. The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court. *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). Resort to the certification procedure is most appropriate when the question is new and state law is unsettled. *Id.* at 390–91, 94 S.Ct.

at 1743–44; *see also Fischer v. Bar Harbor Banking & Trust Co.,* 857 F.2d 4, 7 (1st Cir.1988), *cert. denied,* 489 U.S. 1018, 109 S.Ct. 1135, 103 L.Ed.2d 196 (1989); *Florida ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266, 274–75 (5th Cir.), *cert. denied,* 425 U.S. 930, 96 S.Ct. 1659, 48 L.Ed.2d 172 (1976).

■ Such is not the case here. As we discuss below, this Court has already examined Kentucky law on this issue and found it to be relatively settled. *See United States Fidelity & Guaranty Co. v. Star Fire Coals,* 856 F.2d 31 (6th Cir.1988). Although Kentucky has not addressed the exact question at issue, it does have well-established principles to govern the interpretation of insurance contracts. Accordingly, the District Court did not err in refusing to certify the question. For the same reasons, we also decline to certify it.

### B. Interpretation of "Sudden and Accidental"

■ As with many commercial liability policies issued in the 1970's, the policies at issue in this case all contain the so-called pollution exclusion clause, which reads:

This insurance does not apply; ... (j) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutant into or on land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This clause, with its "sudden and accidental" language, has created enormous amounts of litigation.

Indeed, we have already interpreted this clause under Kentucky law. *Id.* In *Star Fire Coals,* this Court declared:

We believe the everyday meaning of the term "sudden" is exactly what this clause means. We do not believe that it is possible to define "sudden" without reference to a temporal element that joins together conceptually the immediate and the unexpected. It must also be emphasized that

the focus of this "sudden and accidental" exception to the general pollution exclusion clause is on the nature of the discharge of the pollution itself, not on the nature of the damages caused.

.... Thus, we believe that such pollution exclusion clauses apply to the release of wastes and pollutants taking place on a regular basis or in the ordinary course of business.

*Id.* at 34–35.

Defendant attempts to avoid the effects of *Star Fire Coals* by arguing that the Kentucky Supreme Court would not reach this same conclusion. In support of its argument, defendant points to a 1991 decision of the Kentucky Supreme Court: *James Graham Brown Foundation v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273 (Ky.1991).[1] According to defendant, in *Brown Foundation,* the Kentucky high court displayed an inclination toward interpreting liability policies broadly.

We have reviewed *Brown Foundation* and conclude that it does not provide support for defendant's position. In that case, the Kentucky Supreme Court was faced only with interpreting the occurrence clause in a liability policy; the policy at issue did not contain a pollution exclusion clause to limit the scope of the occurrence clause. Moreover, in *Brown Foundation,* the Kentucky Supreme Court reiterated the interpretation principles relied on by this Court in *Star Fire Coals.*

We see no meaningful distinction between *Star Fire Coals* and the present case. In both cases, the insured had deliberately discharged waste over a period of years. Accordingly, defendant cannot claim the protection of the "sudden and accidental" language, and the District Court correctly concluded that the pollution exclusion clause bars coverage in this case.

### C.  Regulatory History

As its last argument, defendant contends that we should estop plaintiff from relying on the pollution exclusion clause be-

cause the insurance industry deliberately misrepresented the meaning of that clause to state regulators. Because we have concluded that the language of the policy is unambiguous, we decline to go behind the face of the policy and examine its drafting history. *See Anaconda Minerals Co. v. Stoller Chemical Co.*, 990 F.2d 1175, 1179 (10th Cir.1993); *cf. Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1437 (9th Cir.1993). Under Kentucky law, extrinsic evidence is not admissible to vary the terms of an unambiguous contract. *J. Walter Wright Lumber Co. v. Red Bird Timber Corp.*, 379 S.W.2d 721, 723 (Ky.1964).

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

---

1.  The City of Bowling Green filed an amicus brief with the court and made a similar argument, directing this court's attention to *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Mil-* *ward, Inc.,* 870 S.W.2d 223 (Ky.1994). We have reviewed that decision and have concluded that it does not change the analysis set forth in *Star Fire Coals.*