**SNYDERGENERAL CORPORATION,**
Plaintiff,

v.

**GREAT AMERICAN INSURANCE COMPANY and United States Fire Insurance Company, Defendants.**

No. 3–90–CV–2396–BD.

United States District Court,
N.D. Texas,
Dallas Division.

April 25, 1996.

See also, 1995 WL 861547.

676

Michael L. Jones, Frieda A. Clark, Henry, Meier & Jones, L.L.P., Dallas, Texas, D. Ronald Reneker, Bush, Craddock & Reneker, Texas Commerce Bank Building, Dallas, Texas, for Plaintiff.

Robert O. Lamb, Belinda Vrielink, Thompson, Coe, Cousins & Irons, L.L.P., Dallas Texas, for U.S. Fire.

Kevin Risley, Houston, Texas, for Great American.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Defendants Great American Insurance Company and United States Fire Insurance Company have filed motions for summary judgment based on certain defenses under a comprehensive general liability policy. The Court holds that: (1) the pollution exclusion unambiguously precludes coverage for the regular, continuous and intentional discharge of toxic chemicals over an extended period of time; (2) plaintiff cannot circumvent the plain language of this policy exclusion under the guise of regulatory estoppel; and (3) the summary judgment evidence does not establish bad faith or any violation of the Texas Insurance Code. For these reasons, the motions are granted.

1. TCE is a toxic chemical which was widely used as a cleaning solvent by some commercial manufacturers. The harmful effects of exposure to TCE are well-documented. These include head-

## BACKGROUND

McQuay, Inc. owned and operated a manufacturing plant in Visalia, California. The plant made aluminum heating and cooling coils of various sizes. The assembled coils were cleaned with trichloroethylene in a large vapor degreaser.[1] TCE was also used to clean the floor and flush out large coils that could not be processed through the degreaser. The plant utilized a drain system to collect any liquid that spilled onto the floor. The drains emptied into four or five dry wells at the west end of the property. This system was in place from 1962 until 1974.

Plaintiff SnyderGeneral Corporation merged with McQuay in 1984. It was later determined that the groundwater surrounding the manufacturing plant was contaminated by TCE. The State of California ordered plaintiff to clean-up this hazardous waste site. Plaintiff was also sued by two adjacent landowners for damages caused by environmental contamination. Plaintiff has paid in excess of $7 million in costs, settlements and legal fees as a result of these proceedings.

Plaintiff and its predecessor had liability insurance for operations at the Visalia plant. Two of these policies were issued by Defendants Great American and U.S. Fire. The policies provide excess coverage for "injurious exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." However, the insurance policies also exclude coverage for polluting activities other than "sudden and accidental" discharges. The pollution exclusion reads as follows:

This policy shall not apply ... to liability arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; *but this exclusion does not apply if such discharge,*

aches, fatigue, nausea, loss of memory, confusion, and vision problems. Prolonged exposure or ingestion of the chemical can be fatal.

*dispersal, release or escape is sudden and accidental.*

(Emphasis added).

Plaintiff notified the defendants of these claims beginning in July 1990. This suit was filed three months later. The operative trial pleading is now plaintiff's sixth amended complaint. Plaintiff has sued for declaratory relief, breach of contract, unfair claims settlement practices, and breach of the duty of good faith and fair dealing. Defendants have filed a motion for summary judgment on all claims. The issues have been fully briefed by the parties and this matter is now ripe for determination.

### SUMMARY JUDGMENT STANDARD

 Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 131 (5th Cir.), *cert. denied,* 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Gleasman v. Jones, Day, Reavis & Pogue,* 933 F.2d 1277, 1281 (5th Cir.1991). Cases involving the interpretation of an insurance policy are appropriate for summary disposition. *See Principal Health Care of Louisiana v. Lewer Agency, Inc.,* 38 F.3d 240, 242 (5th Cir.1994).

 The movant has the initial burden of showing the absence of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). The burden then shifts to the non-movant to show that summary judgment is not proper. *Duckett v. City of Cedar Park,* 950 F.2d 272, 276 (5th Cir.1992). The non-movant may satisfy this burden by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert.* denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters,* 5 F.3d 119, 122 (5th Cir.1993); *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986).

### CHOICE OF LAW

 This is a diversity case. The rules of the forum state determine which law applies. *Klaxon v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Alberto v. Diversified Group, Inc.,* 55 F.3d 201, 203 (5th Cir.1995). Texas has adopted the "most significant relationship" test in both contract and tort cases. *Mitchell v. Lone Star Ammunition, Inc.,* 913 F.2d 242, 249 (5th Cir.1990), *citing Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420–21 (Tex.1984). In a contract case, the court must consider: (1) the place of the contract; (2) the place where the contract was negotiated; (3) the location of the subject matter of the contract; and (4) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex.1991), *citing* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971). In a tort case, the court must consider: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered. *CPS Int'l, Inc. v. Dresser Indus., Inc.,* 911 S.W.2d 18, 29 (Tex.App.—El Paso 1995, writ denied), *citing* RESTATEMENT (SECOND) CONFLICTS OF LAWS § 145 (1971).

 The Court must evaluate each of these contacts in light of the substantive issues presented in this case. *See Mitchell,* 913 F.2d at 249. The first step is to identify the interested states. Plaintiff SnyderGeneral purchased an insurance policy from Defendant U.S. Fire. The policy was negotiated and delivered in Texas. SnyderGeneral is a Delaware corporation with its principal place of business in Texas. U.S. Fire is incorpo-

rated and headquartered in New York. McQuay purchased an insurance policy from Defendant Great American. The policy was delivered in Minnesota. McQuay is incorporated and based in Minnesota. Great American is an Ohio corporation with its principal place of business in that state. Both insurance policies cover operations at a manufacturing plant in Visalia, California. The next step is to identify the substantive issues. This case involves contract and bad faith claims arising out of a standard comprehensive general liability policy. The interests of each state must be examined with respect to these issues. The number of contacts with a particular state is not outcome determinative. Rather, the selection of applicable law depends on the qualitative nature of the particular contacts. *See Mitchell,* 913 F.2d at 249, *citing Gutierrez v. Collins,* 583 S.W.2d 312, 319 (Tex.1979).

■ The parties agree that the claims against U.S. Fire are governed by Texas law. Article 21.42 of the Texas Insurance Code provides that "[a]ny contract of insurance payable to any citizen or inhabitant of the state by any insurance company ... doing business within this state shall be held to be a contract made by virtue of the laws of this state relating to insurance." TEX.INS.CODE ANN. art. 21.42 (Vernon 1981). SnyderGeneral has its principal place of business in Texas. U.S. Fire is an insurance company doing business in the state. The policy was issued and delivered in Texas. Therefore, the statute requires the application of Texas law. *See also Hefner v. Republic Indem. Co. of America,* 773 F.Supp. 11, 13 (S.D.Tex. 1991) (same result under the "most significant relationship" test).

■ Plaintiff contends that the claims against Great American are also governed by Texas law.[2] Great American argues that Minnesota law applies. In making this de-

termination, the Court notes that the Great American policy was issued to McQuay and not SnyderGeneral. The relationship between the insurance company and its insured was clearly centered in Minnesota. The policy was negotiated and purchased in Minnesota. McQuay was incorporated and based in that state. Great American transacted business there. Texas lacks a significant relationship to the substantive issues involved in the breach of contract case. McQuay purchased this insurance policy long before the company was acquired by SnyderGeneral and had no reason to believe that Texas law would apply. The Court therefore concludes that Minnesota has the most significant relationship to the contract claims against Great American.

■ The resolution of this issue is different for the bad faith claims. This cause of action did not accrue until Great American failed to respond to the demand for coverage and refused to tender a defense in the underlying environmental actions. At that time, SnyderGeneral was the policyholder. SnyderGeneral communicated with the insurance company from its principal place of business in Texas. The damages resulting from any unfair claims settlement practices occurred there. Great American is authorized to transact business in the state. Texas has a significant interest in matters related to violations of its insurance laws. *See Albany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882, 891 (5th Cir.), *cert. denied,* 502 U.S. 901, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991). The Court therefore concludes that the bad faith claims against Great American are governed by Texas law.

## *POLLUTION EXCLUSION*

The threshold issue in this case is whether the chemical discharge at the Visalia plant was "sudden and accidental" and thus consti-

---

**2.** Plaintiff maintains that article 21.42 of the Texas Insurance Code also controls the choice of law issue with respect to the contract claims against Great American. This argument fails for at least two reasons. First, the insurance contract is between McQuay and Great American. McQuay is not a "citizen or inhabitant of Texas." *See* TEX.INS.CODE ANN. art. 21.42. Second, this statute applies only to insurance contracts made in the

course of a company's Texas business. *See Butler v. Mut. Life Assurance Co.,* 600 F.2d 532, 534 (5th Cir.1979), *citing Austin Building Co. v. National Union Fire Ins. Co.,* 432 S.W.2d 697, 701 (Tex.1968). The record shows that the Great American policy was not issued as part of its Texas business. Rather, the policy was sold to McQuay by insurance brokers in Minnesota.

tutes an exception to the pollution exclusion. This policy provision has been interpreted by many courts in recent years with different results.[3] Plaintiff contends that the phrase is ambiguous and should be construed to mean unexpected or unintended. Defendants argue that "sudden and accidental" unambiguously contains a temporal element that precludes coverage for habitual polluters.

### 1. *Minnesota Law*

 The law in Minnesota is well-settled. The Minnesota Supreme Court has held that "sudden" is unambiguous and has a temporal connotation that means abrupt or the opposite of gradual. *Board of Regents v. Royal Ins. Co.*, 517 N.W.2d 888, 892 (Minn.1994). The court refused to construe "sudden" to mean unexpected because such an interpretation would create a redundancy with "accidental." *Royal Ins.*, 517 N.W.2d at 892. Thus, the "sudden and accidental" exception to the pollution exclusion does not apply to the gradual release of pollutants over an extended period of time. *See also Modern Constructors, Inc. v. Continental Casualty Co.*, 38 F.3d 377, 378 (8th Cir.1994); *Bureau of Engraving, Inc. v. Federal Ins. Co.*, 5 F.3d 1175, 1177 (8th Cir.1993); *Sylvester Bros. Dev. Co. v. Great Central Ins. Co.*, 480 N.W.2d 368, 375 (Minn.App.1992, writ denied).

### 2. *Texas Law*

 The Texas Supreme Court has held that the standard pollution exclusion is "clear and not patently ambiguous." *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex.1995). However, the court has never interpreted the "sudden and accidental" exception to this policy exclusion. *See Liberty Mut. Ins. Co. v. Mustang Trac-*

*tor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1991, no writ). This Court must therefore predict the outcome of this issue under Texas law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77–78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

 Insurance policies are controlled by the rules of interpretation and construction applicable to contracts generally. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). These rules require courts to effectuate the intentions of the parties as they are expressed in the contract. *Ideal Lease Service, Inc. v. Amoco Prod. Co., Inc.*, 662 S.W.2d 951, 953 (Tex.1983). All contractual provisions must be read together in order to give each provision its intended effect. *Forbau*, 876 S.W.2d at 133. Individual words, phrases or clauses should not be isolated. Rather, the entire document must be read as a whole. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).

These rules of construction lead this Court to the inescapable conclusion that "sudden" has a temporal element. This is the only logical interpretation when the terms "sudden and accidental" are read together. There are several definitions of "sudden" in the dictionary: (1) happening or coming unexpectedly; (2) marked by or manifesting abruptness or haste; (3) made or brought about in a short period of time. *See* WEBSTER'S COLLEGIATE DICTIONARY 1176 (10th ed. 1993). Texas courts have held that "accidental" generally describes an unforeseen or unexpected event. *See e.g., Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 554 (Tex.1976). It would be redundant to give "sudden" the same meaning. The Fifth Circuit recently noted that:

**3.** The highest courts of Florida, Massachusetts, Michigan, Minnesota, North Carolina and Ohio have defined the term "sudden" as unambiguously containing a temporal component. The highest courts of Colorado, Georgia, Illinois, New Jersey, Washington, West Virginia and Wisconsin have held that "sudden" is ambiguous and have construed the term in favor of the insured. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Service, Inc.*, 40 F.3d 146, 151–52 (7th Cir.1994) (listing courts of last resort that have

interpreted the "sudden and accidental" exception to the pollution exclusion).

The results are more uniform among federal courts. An overwhelming majority of cases decided within the last five years have determined that the term "sudden" contains a temporal element that bars coverage for polluting activities that occur over an extended period of time. *See SnyderGeneral Corp. v. Century Indem. Co.*, 907 F.Supp. 991, 996 n. 7 (N.D.Tex.1995) (citing cases that have decided the issue).

The very use of the words "sudden and accidental" ... reveal a clear intent to define the words differently, stating two separate requirements. Reading "sudden" in its context, i.e. joined by the word "and" to the word "accidents," the inescapable conclusion is that "sudden", even if including the concept of unexpectedness, also adds an additional element because "unexpectedness" is already expressed by "accident." This additional element is the temporal meaning of sudden, i.e. abruptness or brevity. To define sudden as meaning only unexpected or unintended, and therefore as a mere restatement of accidental, would render the suddenness requirement mere surplusage.

*Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co.*, 76 F.3d 89, 92 (5th Cir.1996), *quoting Northern Ins. Co. v. Aardvark Assoc., Inc.*, 942 F.2d 189, 192–93 (3d Cir.1991). The Court therefore concludes that "sudden" is unambiguous and means abrupt, quick or brief. The pollution exclusion bars coverage for discharges that are not abrupt as well as unexpected and unintentional.[4]

### 3. Discussion

Defendants have moved for summary judgment based on the language of the pollution exclusion. In order to defeat this motion, plaintiff must adduce evidence that would permit a reasonable trier of fact to find that the discharge of TCE was "sudden and accidental" as those terms are defined under Minnesota and Texas law.[5]

Plaintiff relies on the deposition testimony of Donald Williams and James Mercer in an attempt to show that the release of TCE was "quick or abrupt." Williams worked at McQuay from 1962 until 1974. Mercer is a hydrogeologist who studied the cause of groundwater contamination at the Visalia plant. Williams testified that the single largest TCE spill was the result of an accident in the late 1960's. He said that a float on the degreaser got stuck which caused approximately 1,700 gallons of the solvent to overflow onto the floor and go down the drain. Mercer testified that the concentrations of TCE in the soil were consistent with a large chemical spill. He concluded that the groundwater contamination was caused by this one accident.

The record does support an inference that the damages sustained by adjacent landowners were caused, in part, by this accidental spill of TCE. However, plaintiff has failed to show that this discharge was "sudden *and* accidental." Federal courts in Minnesota and Texas have rejected coverage under the pollution exclusion where the insured has engaged in the deliberate discharge of contaminants in the routine course of business over many years. The fact that the insured may have also experienced isolated spills or minor accidents over the same period of time is irrelevant. *See Bureau of Engraving*, 5 F.3d at 1177–78 (Minnesota law); *American States Ins. Co. v. Hanson Indus.*, 873 F.Supp. 17, 26 (S.D.Tex.1995) (Texas law). The summary judgment evidence establishes that plaintiff regularly and routinely poured TCE into floor drains that emptied into dry wells. This practice continued for twelve years. The insurance policies issued by defendants were intended to exclude coverage

---

**4.** Most federal courts that have addressed this issue under Texas law have reached the same result. *See SnyderGeneral Corp. v. Century Indem. Co.*, 907 F.Supp. 991 (N.D.Tex.1995); *American States Ins. Co. v. Hanson Indus.*, 873 F.Supp. 17 (S.D.Tex.1995); *Meridian Oil Prod., Inc. v. Hartford Accident & Indem. Co.*, No. G–91–167 (S.D.Tex., March 4, 1993), *aff'd*, 27 F.3d 150 (5th Cir.1994); *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 870 F.Supp. 1293, 1349 (E.D.Pa.1992), *aff'd on other grounds*, 15 F.3d 1249 (3d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 291, 130 L.Ed.2d 206 (1994); *National Standard Ins. Co. v. Continental Ins. Co.*, No. CA–3–81–1015–D (N.D.Tex., October 4, 1983).

Only one intermediate state appellate court has made a contrary ruling. *Circle "C" Ranch Co. v. St. Paul Fire & Marine Ins. Co.*, 1993 WL 142131 (Tex.App.—Austin) (defining "sudden" as not including a temporal element). This opinion was subsequently withdrawn after the parties settled the case.

**5.** The burden of proof on this issue is the same under Minnesota and Texas law. The insurer has the burden of establishing a policy exclusion. The burden then shifts to the insured to show that an exception to the exclusion restores coverage. *See SCSC Corp. v. Allied Mut. Ins. Co.*, 533 N.W.2d 603, 611 (Minn.1995); *Telepak v. United Services Auto. Ass'n*, 887 S.W.2d 506, 507–08 (Tex.App.—San Antonio 1994, writ denied).

for this type of conduct. To hold otherwise would provide no incentive to avoid careless long-term waste disposal practices. *See Sny-derGeneral Corp. v. Century Indem. Co.,* 907 F.Supp. 991, 1002 (N.D.Tex.1995).

Plaintiff cites two Minnesota cases and one Texas case for the proposition that coverage is not necessarily precluded if some of the pollution was caused by an accidental spill. *Bituminous Casualty Corp. v. Tonka Corp.,* 9 F.3d 51, 53–54 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1834, 128 L.Ed.2d 462 (1994); *SCSC Corp. v. Allied Mut. Ins. Co.,* 533 N.W.2d 603, 612 (Minn. 1995); *Warrilow v. Norrell,* 791 S.W.2d 515, 526 (Tex.App.—Corpus Christi 1989, writ denied). In *Tonka,* the court held that coverage was barred because the ongoing and routine disposal of TCE was not "sudden" as a matter of law. The court also suggested that the outcome might have been different if there was evidence that the contamination was caused by an accidental spill. However, several different insurance policies were involved in that case. The court noted in dicta that evidence of an accidental spill may have precluded summary judgment as to those policies that did not contain a pollution exclusion, but specifically held that there was no coverage under those policies that contained such an exclusion. *Tonka,* 9 F.3d at 53.

The *SCSC* case is also distinguishable. The insured operated a dry-cleaning supply distribution facility. As a small part of its business, the insured purchased, stored and repackaged perchloroethylene. The chemical was dispensed to delivery trucks through a fill pipe. A five-gallon bucket was placed beneath the pipe to collect PCE that dripped when the pipe and hose were uncoupled. There was also evidence of a major chemical spill in 1977. The jury found that the property damage was caused by this accidental spill and that "the damage was neither divisible nor attributable to an overriding cause." Significantly, there was no evidence that the insured routinely discharged toxic chemicals as part of its regular and ongoing business

activities. Under these facts, the court properly held that the discharge was "sudden and accidental." *SCSC Corp.,* 533 N.W.2d at 612.

Finally, the *Warrilow* case is wholly inapposite. The insured in *Warrilow* was accidently shot when a pistol was dropped on the ground. The accident occurred while three men were changing a flat tire on a rented vehicle after a hunting trip. The relevant insurance policy provided coverage for hunting accidents but excluded coverage for accidents resulting from maintaining or loading a car. The court held that there were two distinct causes of the accident and that one did not negate the other. This holding is a sound application of general causation principles. However, it provides little guidance in cases involving the "sudden and accidental" exception to the pollution exclusion.

### 4. *Conclusion*

The Court concludes that the regular, continuous and intentional discharge of TCE into the environment over twelve years is not "sudden and accidental" as a matter of law. A single large chemical spill during this period is not sufficient to create a fact issue. Rather than one isolated event, "it is ... the nature of an insured's enterprise and its historical operations that determine the applicability of the [pollution exclusion]." *Lumbermens Mut. Casualty Co. v. Belleville Indus., Inc.,* 938 F.2d 1423, 1429 (1st Cir. 1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992). Plaintiff was a habitual polluter. The pollution exclusion precludes coverage for this type of conduct. Defendants are entitled to summary judgment on the basis of this policy defense.[6]

### *REGULATORY ESTOPPEL*

As an alternative theory of recovery, plaintiff seeks to establish coverage under the doctrine of "regulatory estoppel." Plaintiff argues that the insurance industry misled state regulators in 1970 by representing that the pollution exclusion merely "clarified" ex-

---

6. Defendants have also moved for summary judgment under the "occurrence" and "notice" provisions of the insurance policies. These issues need not be addressed because coverage is barred under the pollution exclusion. In addi-

tion, Great American has no duty to defend plaintiff because the Court has determined that there is no coverage under the policy. *See Senger v. Minnesota Lawyers Mut. Ins. Co.,* 415 N.W.2d 364, 369 (Minn.App.1987, writ denied).

isting coverage and was not a "reduction" in coverage. Defendants now contend that this exclusion operates as an absolute bar to coverage for habitual polluters. Plaintiff maintains that the Texas State Board of Insurance relied on these representations when it approved the pollution exclusion. Therefore, the defendants should be estopped from denying coverage for property damage caused by gradual pollution.

Only one state has recognized the doctrine of regulatory estoppel. *Morton Int'l, Inc. v. General Accident Ins. Co. of America*, 134 N.J. 1, 629 A.2d 831 (1993), *cert. denied*, — U.S. ——, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994). The *Morton* court held that insurers were estopped from relying on an interpretation of the pollution exclusion that was inconsistent with prior representations made to regulatory authorities. The insurers had described this exclusion as merely a "clarification" of existing coverage "so as to avoid questions of intent." The court noted:

> Although we have not heretofore applied the estoppel doctrine in a regulatory context, its application to these circumstances is appropriate and compelling. A basic role of the Commissioner of Insurance is "to protect the interests of policy holders" and to assure that "insurance companies provide reasonable, equitable and fair treatment to the insuring public." (Citations omitted). In misrepresenting the effect of the pollution exclusion clause to the Department of Insurance, the [insurance rating board] misled the state's insurance regulatory authority in its review of the clause, and avoided disapproval of the proposed endorsement as well as a reduction in rates. As a matter of equity and fairness, the insurance industry should be bound by the representations of the IRB, its designated agent, in presenting the pollution exclusion clause to state regulators.

*Morton*, 629 A.2d at 874.[7]

The regulatory estoppel argument has been rejected by virtually every other state and federal court to address the issue. *See Federated Mut. Ins. Co. v. Botkin Grain Co.*, 64 F.3d 537 (10th Cir.1995) (Kansas law); *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370 (6th Cir.1995) (Kentucky law); *Cincinnati Ins. Co. v. Flanders Elec. Motor Service, Inc.*, 40 F.3d 146 (7th Cir.1994) (Indiana law); *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*, 842 F.Supp. 575 (D.D.C.1994), *aff'd*, 69 F.3d 1160 (D.C.Cir.1995) (Missouri law); *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp.*, 636 So.2d 700 (Fla.1993); *Farm Bureau Mut. Ins. Co. v. Laudick*, 18 Kan. App.2d 782, 859 P.2d 410 (1993, writ denied); *ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co.*, 17 Cal.App.4th 1773, 22 Cal.Rptr.2d 206 (1993, writ denied); *Smith v. Hughes Aircraft Co.*, 783 F.Supp. 1222 (D.Ariz.1991), *aff'd in part*, 22 F.3d 1432 (9th Cir.1993) (Arizona law). *See also* Zampino, Cavo & Harwood, *Morton International: The Fiction of Regulatory Estoppel*, 24 Seton Hall L.Rev. 847 (1993).

The Minnesota Supreme Court has specifically rejected the doctrine of regulatory estoppel. *Anderson v. Minnesota Ins. Guar. Ass'n*, 534 N.W.2d 706 (Minn.1995). The issue has not been addressed in Texas. However, the recent decision in *CBI Industries* is instructive. In that case, the insurance companies moved for summary judgment based on the standard pollution exclusion. The insured wanted to obtain documents from the insurance industry to show that "the parties shared a mutual, yet unstated, intent that the exclusion would not encompass 'accidental' releases of pollutants." The trial court refused to allow this discovery. The Texas Supreme Court affirmed. The court flatly rejected any attempt to rely on extrinsic evidence to create a latent ambiguity where the policy provision is clear on its face. *CBI Indus.*, 907 S.W.2d at 521–22.

■ This case indicates that Texas courts would not be receptive to the regulatory estoppel argument made by plaintiff. In fact, the doctrine has not been accepted in any jurisdiction that has held the pollution

---

7. It is significant to note that the *Morton* court ultimately denied coverage. *Morton*, 629 A.2d at 880. The court held that the intentional discharge of known pollutants over an extended period was not an "occurrence" under the policy.

exclusion unambiguous.[8] The pollution exclusion is just what it purports to be—absolute. *CBI Indus.*, 907 S.W.2d at 522, *quoting Alcolac, Inc. v. California Union Ins. Co.*, 716 F.Supp. 1546, 1549 (D.Md.1989). An insured cannot rely on extrinsic evidence to create insurance coverage where none exists. *See also Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602–03 (Tex.1988), *citing Washington Nat'l Ins. Co. v. Craddock*, 130 Tex. 251, 109 S.W.2d 165 (1937) (doctrine of estoppel cannot be used to create coverage). Defendants are entitled to judgment as a matter of law.

### BAD FAITH CLAIMS

 Plaintiff has also sued the defendants for breach of the duty of good faith and fair dealing and violations of the insurance code. The Court has previously determined that these claims are governed by Texas law. The controlling case is *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338 (Tex.1995).

In *Stoker*, the Texas Supreme Court held that, as a general rule, an insured cannot establish a bad faith claim when the insured has a reasonable ground for denying coverage. The court noted, however, that:

> We do not exclude ... the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim. Nor should we be understood as retreating from the established principles regarding the duty of an insured to timely investigate its insured's claims.

*Stoker*, 903 S.W.2d at 341.

The Texas Insurance Code prohibits certain unfair claims and settlement practices by insurers. This conduct includes unreasonable delays in processing claims and failing to promptly acknowledge communications with insureds. *See* TEX.INS.CODE ANN. art. 21.21–2 § 2(a) & (b) (Vernon 1981). An insured has a private cause of action for violations of article 21.21. TEX.INS.CODE ANN. art. 21.21 § 16 (Vernon 1981); *see also Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 134–35 (Tex.1988). In order to defeat summary judgment, plaintiff must show that there is a genuine issue for trial with respect to one or more of these alleged violations.

The record reflects that plaintiff waited almost three years before it notified the defendants of property damage claims arising from groundwater contamination at the Visalia plant. Plaintiff sent a notice letter to Great American and U.S. Fire on July 13, 1990. Great American responded within a week and requested additional information about the pending lawsuits and primary insurance coverage. U.S. Fire took immediate steps to investigate the claims and prepare a reservation of rights letter. Neither insurance company told plaintiff that coverage would be denied. Nevertheless, plaintiff filed suit against the defendants in federal court on October 16, 1990.

The Court holds that the conduct of the defendants in this case was not unreasonable as a matter of law. Plaintiff made a demand for excess coverage in three major lawsuits involving millions of dollars. Defendants were entitled to investigate these claims before they made a coverage determination. This could not be done over the course of three months. Indeed, plaintiff consulted with environmental experts and litigated these claims for nearly three years before it even contacted the insurance carriers. A three month delay in processing this claim and communicating with the insured was not "extreme" or "unreasonable" under the circumstances. *See Lyons v. Millers Casualty Ins. Co. of Texas*, 866 S.W.2d 597, 600 (Tex. 1993) (mere delay does not necessarily constitute bad faith); *but cf. SnyderGeneral Corp.*, 907 F.Supp. at 1006 (failure of insurance company to respond to three letters over a five year period was sufficient to create a fact issue). Plaintiff has failed to establish a genuine issue of material fact issue that precludes summary judgment on the bad faith claims.[9]

---

8. New Jersey is the only state to endorse the doctrine of regulatory estoppel. The New Jersey Supreme Court also held that "sudden" is ambiguous and construed the term to mean unexpected or unintended. *See Morton Int'l*, 629 A.2d at 871.

9. The Court held an informal conference with the parties on August 10, 1995. At that time,

## CONCLUSION

The motions for summary judgment are granted. The Court will enter a final judgment in favor of the defendants.

SO ORDERED.

counsel for plaintiff indicated that it would be futile to try the bad faith claims in view of the tentative ruling that coverage was barred under the pollution exclusion. The case was thereafter removed from the trial docket.